IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
JUN 2 2015
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **UNDER SEAL** |
| | ) | |
| v. | ) | Criminal No. 1:15MJ306 |
| | ) | |
| MICHAEL RYAN MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

### I. IDENTITY OF THE AFFIANT

I, Brittany J. Maher, being duly sworn, state:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since August 2014. Since January 2, 2015, I have been assigned to a white collar crime squad at the Washington Field Office, Northern Virginia Resident Agency in Manassas, Virginia. The squad specializes in the investigation of health care fraud offenses committed in Northern Virginia, including pharmaceutical drug diversion and prescription fraud.

2. I am working directly with other special agents who have extensive experience in criminal investigations and investigative techniques utilized by law enforcement, including but not limited to the purchase of narcotics as evidence of drug trafficking. These agents are also familiar with the techniques and methods by which drug traffickers transport and distribute controlled substances and conceal the proceeds they derive from the sale of narcotics. I am also familiar with the use, effects, appearance, and methods of manufacture of controlled substances.

## II. REASON FOR AFFIDAVIT

3. This affidavit is made in support of an arrest warrant and criminal complaint charging MICHAEL RYAN MARTIN ("MARTIN") with conspiring to distribute heroin, a Schedule I controlled substance, and oxycodone, a Schedule II controlled substance all in violation of Title 21, United States Code, Section 846.

4. The facts and information contained in this affidavit are based on my personal knowledge of the investigation, the observations of other law enforcement officers, and information from a confidential informant. This affidavit is not intended to include each and every fact and matter observed by me or known to the government relating to the subject matter of this investigation. Instead, this affidavit contains only those facts which are necessary to establish that probable cause exists to support the aforementioned arrest warrant and criminal complaint.

## III. BACKGROUND

### A. RELEVANT CONTROLLED SUBSTANCES

#### i. Heroin

5. Heroin is a highly addictive opioid processed from morphine, a naturally occurring substance extracted from certain varieties of poppy plants. Heroin is typically sold as a white or brownish powder, or as a black sticky substance, also known as "black tar heroin." It is common for street dealers to refer to the standard brown heroin as the "brown." Another term typically used for heroin is "down." Heroin can be injected, smoked, or sniffed/snorted, and because it enters the brain rapidly it is particularly addictive, both physically and psychologically. The Drug Enforcement Administration ("DEA") classifies Heroin as a

Schedule I substance, which means it has no currently accepted medical use and is among the most dangerous drugs of all the drug schedules with potentially severe psychological or physical dependence.

**ii. Oxycodone**

6. Oxycodone is a commercially available, pharmaceutical narcotic analgesic that is used to treat moderate to severe pain and is available only with a prescription written by a licensed medical practitioner acting in the usual course of his or her professional practice. Oxycodone is classified as a Schedule II controlled substance by the DEA. A Schedule II controlled substance is one that has a high likelihood of causing severe psychological and physical dependence in users and has a high potential for abuse. Oxycodone is the active ingredient in the brand-name drugs OxyContin and Roxicodone.

7. Based on my training and experience, oxycodone is abused by drug addicts in various ways to achieve a heroin-like high. These forms of abuse include crushing the pills to be snorted, dissolving the pills in liquid to inject or "shoot" intravenously and smoking the pills by heating the pills on aluminum foil and inhaling the smoke. Oxycodone pills are frequently sold illegally by individuals who obtain them by prescription, with the street value of the pills being approximately $1 per milligram. An oxycodone 30 milligram pill can typically be sold on the street for approximately $30 per tablet. Generic oxycodone 30 milligram tablets are light blue in color and commonly referred to as "blues."

## IV. INVESTIGATION

### A. OVERVIEW

8. MARTIN is part of a network of individuals in the Northern Virginia region distributing oxycodone and heroin. FBI surveillance units have observed activity consistent with

distribution to buyers in the Northern Virginia region within the Eastern District of Virginia. FBI Confidential Informants ("CI-1" and "CI-2") provided information from text message conversations and conducted consensually monitored recordings with MARTIN. Additionally, CI-1 and CI-2 made controlled purchases involving MARTIN. Information from CI-1 and CI-2, surveillance, and other investigative means, revealed that MARTIN is connected to other individuals, known and unknown.

**B. CONTROLLED PURCHASES WITH CI-1**

**i. February 13, 2015**

14. On or about February 13, 2015, Special Agents of the FBI, along with CI-1, conducted a controlled purchase of oxycodone and heroin from CI-2. Prior to the meeting, FBI surveillance units observed CI-2 and MARTIN in CI-2's vehicle, leaving a parking lot in the vicinity of the office of Dr. J.N., located at 7489 Huntsman Boulevard, Springfield, Virginia. Research conducted on the Patient Utilization Report generated from the Virginia Prescription Monitoring Program ("PMP") revealed that MARTIN is a patient of, and has been prescribed 30 milligram oxycodone tablets by, Dr. J.N. From there, CI-2 and MARTIN drove to the vicinity of 8988 Lorton Station Boulevard, Lorton, Virginia. CI-2 was observed letting MARTIN out of the vehicle, then parking. Approximately 10 minutes later, MARTIN was observed returning to CI-2's vehicle. KC Pharmacy is located at 8988 Lorton Station Boulevard, Suite 102. Record checks of the PMP indicate MARTIN filled the prescription for 30 milligram oxycodone at this location on this date. From there, CI-2 and MARTIN drove to the vicinity of 8629 Eagle Glen Terrace, Fairfax Station, VA 22039. A check of NCIC revealed that location to be the address on file for MARTIN. Approximately five minutes later, CI-2 was observed departing the same location alone. CI-2 then drove to 15818 Donald Curtis Drive, Woodbridge, Virginia, 22191, in

the Eastern District of Virginia. A check of NCIC revealed that location to be the address on file for CI-2. Around that time, CI-2 sent a communication to CI-1 indicating that he/she had everything for a transaction in which CI-1 requested 20 tablets of oxycodone and 3 grams of heroin. Approximately 30 minutes later, CI-2 was observed departing 15818 Donald Curtis Drive, Woodbridge, Virginia, 22191, and surveillance was terminated.

15. Later that same evening, a controlled purchase was conducted in the parking lot of Wal-Mart, located at 1400 Worth Avenue, Woodbridge, Virginia, a location within the Eastern District of Virginia. CI-1 was observed standing outside of CI-2's vehicle, and communicating with CI-2, who was a passenger in the vehicle. The driver of the vehicle was later identified by CI-1 as MARTIN from a photo lineup. CI-2 and MARTIN then departed the area. CI-1 exchanged $1020 USD of government funds for 20 round blue tablets with "M" inside of a box on one side and "30" on the other side, as well as three small zip-lock bags containing a brown solid substance. Online research revealed the tablets had marking consistent with 30 milligram oxycodone tablets. The brown solid substance weighed 2.9 grams and field tested positive for heroin using an opiates reagent test kit.

**C. CONTROLLED PURCHASES WITH CI-2**

**i. March 11, 2015**

15. On March 11, 2015, Special Agents of the FBI executed a federal search warrant at the residence of CI-2. As a result, CI-2 agreed to cooperate and conducted a consensually monitored recording with MARTIN. During the conversation, CI-2 asked MARTIN if he had any "blues," to which he responded he had nothing left. Furthermore, in the conversation, MARTIN indicated an employee at McLean Pharmacy, located at 1392 Chain Bridge Road, McLean, Virginia, in the Northern Virginia region, knew that he abused his prescriptions, he had

been on the prescriptions for "so long," and that he had been through three different doctors. Additionally, pursuant to the federal search warrant, FBI Special Agents searched CI-2's cell phone. It was noted between 11:49AM and 9:45PM on March 10, 2015, MARTIN exchanged the following text messages with CI-2:

CI-2: "Did u jist text me that?"

CI-2: "I have sime good shit on me. I can't believe this either"

MARTIN: "Nah a while ago"

MARTIN: "I'm at doctor now"

MARTIN: "Rescheduled for 1145"

MARTIN: "Let u know when I am leaving"

CI-2: "Ok. Your text just came thru right now. My phone keeps messing up! It's so frustrating. If I don't respond hit me on fb. I really need some. I'm so sorry about this morning I was trying to find you a ride"

MARTIN: "Its cool I'm leaving doc now to go to pharmacy"

MARTIN: "I really need to get that down from u too R u done w work?"

CI-2: "Ok. I have really good down. If u want"

CI-2: "Yes just got done. I'm in rose hill"

MARTIN: "Yeah I do badly"

MARTIN: "Wunna meet me at the pharmacy?"

MARTIN: "I'm on my way there"

CI-2: "The shit is awesome. Everyone keeps coming back for more lol"

MARTIN: "Ok"

CI-2: "Hit me up on facebook when you are done, I'm going to turn my phone off for a little bit. But I have my kindle"

MARTIN: "I'll just come up there after I fill my script"

MARTIN: "Hey"

MARTIN: "Where r u"

MARTIN: "Hey i had to come out to Mclean pharmacy Bc KC was out of them"

CI-2: "Hey"

CI-2: "Do you have left?"

MARTIN: "Wussup"

CI-2: "I really would like to get whatever u have left pllllleeaaassee!"

CI-2: "And im so sorry about today, my boss has NEVER just showed up like that"

MARTIN: "Oh man I just sold my last 11 for 330"

CI-2: "Damn you"

MARTIN: "I'm sorry bae u just missed me"

MARTIN: "I saw ur bro and I still had 16 when I saw him then Bj came and got 5 more then this other dude came and got the last 11"

16. On March 11, 2015, Special Agents of the FBI conducted an interview with CI-2 in which he/she described an ongoing narcotics relationship with MARTIN. CI-2 is aware that MARTIN has been selling his prescribed oxycodone tablets for at least a year and half. CI-2 has supported MARTIN's drug distribution scheme by providing rides to MARTIN when he obtained narcotics. Also, in exchange for paying MARTIN's doctor and prescription co-pays, MARTIN would sell his oxycodone tablets to CI-2 at a discount of $20 to $25 USD per tablet, which allowed CI-2 to make a profit when reselling the tablets.

ii. **April 6, 2015**

17. On or about April 6, 2015, Special Agents of the FBI, along with CI-2, conducted a controlled purchase of oxycodone from MARTIN. CI-2 was observed meeting with MARTIN in the parking lot of KC Pharmacy located at 8988 Lorton Station Blvd, Lorton, Virginia, which is within the Eastern District of Virginia. MARTIN got into the passenger side of CI-2's vehicle, and exchanged $500 in governmental funds for 23 round blue tablets imprinted with "30" on one side and an "M" inside a box on the other side from MARTIN. Web-based drug identification guides showed that the markings on these tablets are consistent with 30 milligram oxycodone tablets.

**D. IDENTIFICATION**

18. While conducting surveillance during the controlled buy on April 6, 2015, I was able to identify MARTIN by comparing his appearance with his photograph on file with the Virginia Department of Motor Vehicles. Additionally, agents participating in the surveillance of MARTIN were able to confirm MARTIN's identity when compared with the same photograph.

**V. CONCLUSION**

19. Based upon the foregoing, I submit that there is probable cause to believe that, within the Eastern District of Virginia and elsewhere, MICHAEL RYAN MARTIN, knowingly, unlawfully, and intentionally combined, conspired, confederated, and agreed with others to distribute heroin, a Schedule I controlled substance, and oxycodone, a Schedule II controlled substance all in violation of Title 21, United States Code, Section 846.

Respectfully submitted,

Brittany J. Maher
Special Agent
Federal Bureau of Investigation

Reviewed by:
Neal B. Christiansen
Special Assistant United States Attorney
Kosta Stojilkovic
Assistant United States Attorney

SUBSCRIBED and SWORN to before me
this [illegible] day of June, 2015 ~~in Alexandria, Virginia.~~

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge